IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| MICHAEL KELLEY, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 05-1625 |
| FAGEN'S INC., and INSTALLED SERVICES, | ) | Chief Judge Ambrose |
| | ) | Magistrate Judge Hay |
| Defendants. | ) | RE: Dkt. [21] |

REPORT AND RECOMMENDATION

I. RECOMMENDATION

It is recommended that the Defendants' Motion for Summary Judgment be granted.

II. REPORT

Michael Kelley ("Plaintiff") brought suit against Fagen's, Inc. and Installed Services ("Defendants") for injuries he sustained in a fall on January 2, 2005, while working as an independent drywall subcontractor for Defendants at the Treesdale Housing Development located in Mars, Pennsylvania.[1] Plaintiff initiated suit by the filing of a complaint in the Court of Common Pleas of Allegheny County, Pennsylvania, on a single claim of negligence.[2] Specifically, Plaintiff alleged that scaffolding owned by Defendants and available for his use at

---

[1] Complaint, Dkt. [1-3], ¶¶ 7, 8, 11, 15.

[2] Complaint at Count I.

the jobsite was defective, unsafe and dangerous and caused his injuries.[3] Defendants removed the matter to this Court.[4]

The record demonstrates that on January 2, 2005, Plaintiff performed drywall finishing at 1307 Alvaria Lane, one of the houses under construction at Treesdale.[5] Plaintiff had over thirty years of experience with drywall, having begun his career hanging drywall in 1976.[6] Typically, he used his own scaffold while working in smaller, closed areas, such as bathrooms, but utilized company scaffolds on all other portions of the job.[7] On the date of the accident, he utilized scaffolding that was pre-assembled and owned by Defendants.[8] The scaffolding was two-tiered and approximately eleven feet high.[9]

At one point during his work, from the ground level in the house Plaintiff positioned the scaffolding by the second story landing.[10] He then walked up the stairs in the house to the landing and stepped onto the scaffolding, at which point the scaffolding purportedly shot away from the landing "like a rocket" and traversed the room approximately twenty to twenty-five feet

---

[3] Complaint, ¶¶ 15, 17.

[4] Notice of Removal, Dkt. [1].

[5] Deposition of Michael Kelley ("Kelley Dep."), Dkt. [31-3], p. 69; Deposition of James Fellabaum ("Fellabaum Dep."), Dkt. [31-4], pp. 30-31.

[6] Kelley Dep., pp. 30-32.

[7] Id., p. 42.

[8] Id., pp. 65, 98.

[9] Fellabaum Dep., pp. 36-37.

[10] Kelley Dep., p. 69.

diagonally with Plaintiff atop it, holding on to one of its planks.[11]  After the scaffolding stopped moving, he climbed off the scaffolding to inspect the wheel locks since he suspected that the cause of this unusual movement was a locked wheel.[12]  It appears that it was a common practice for drywall finishers like Plaintiff to shimmy the scaffolding to move it from place to place while working, with the wheels in an unlocked position.[13]  Upon inspection, however, it appeared that all of the wheels were in an unlocked position and that force was necessary to engage the wheel locks.[14]

Plaintiff again moved the scaffolding over to the second story landing.[15]  He again climbed the house stairs.[16]  Plaintiff has no memory of what happened next.[17]  Apparently, an equipment operator found Plaintiff on the ground floor, unconscious.[18]  He regained consciousness in the hospital twelve days later.[19]

---

[11] Id., pp. 71, 93, 95.

[12] Id., pp. 71, 96.

[13] Deposition of Robert Smith, Dkt. [31-5], p. 58.

[14] Id., pp. 71, 97.

[15] Kelley Dep., p. 71.

[16] Id., p. 101.

[17] Id.

[18] Id., 102.

[19] Id., pp. 71-72.

3

As a result of the apparent fall, Plaintiff suffered head trauma, a fractured right foot, three broken ribs, three broken fingers, a collapsed lung, a shattered shoulder, and seven shattered vertebrae.[20]

Presently before the Court for disposition is the Defendants' motion for summary judgment. For the reasons that follow, the motion should be granted.

*Standard of Review*

Summary judgment is appropriate if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ. P. 56(c). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a *genuine issue for trial* ... or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. Matsushita Electric Industrial Corp. v. Zenith Radio Corp., 475 U.S. 574 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). Thus, it must be determined "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so

---

[20] Id., p. 113.

4

one-sided that one party must prevail as a matter of law.'" Brown v. Grabowski, 922 F.2d 1097, 1111 (3d Cir. 1990), cert. denied, 501 U.S. 1218 (1991), quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 251-52.

*__Discussion__*

Prior to beginning his work with the Defendants, Plaintiff signed a Subcontractor Agreement ("Agreement")[21] and a separate Subcontractor Disclaimer ("Disclaimer").[22] Under the terms of the Agreement, Plaintiff agreed to provide health insurance to cover himself should he be injured on the job. Specifically, the Agreement provided:

> Sub-Contractor agrees that he/she will provide for himself/herself and at his/her own expense full insurance coverage to insure himself/herself against all damages, injuries, or losses to his/her person or to his property in any way arising from or connected to this Sub-Contract or any work performed by Sub-Contractor or any products, materials or equipment sold, rented, loaned [or] otherwise provided by or attributable to Contractor.

See Dkt. [23-3], ¶ 8. At the time of the accident, Plaintiff had contractor liability insurance however, he did not have health insurance coverage for himself.[23]

Under the terms of the Agreement, Plaintiff had agreed that he would look only to his own insurance for recompense in the event he was injured on the job.

> Sub-Contractor further agrees that he/she will look only to this insurance for compensation for any damages, injuries or losses to his/her person or his/her property in any way arising from or connected with this Sub-Contract in any work performed by Sub-Contractor or any products,

---

[21] See Dkt. [23-3].

[22] See Dkt. [23-4].

[23] Kelley Dep., pp. 44-45.

5

> materials or equipment sold, rented, loaned or otherwise provided by or attributable to Contractor.

See Dkt. 23-3, ¶ 8. As noted, Plaintiff did not have health insurance coverage for himself at the time of his accident.

Additionally, Plaintiff had agreed to release and indemnify Defendants for any injury sustained as a result of work performed as a subcontractor for Defendants, including any injury arising from the contractor's negligence or defective products supplied by the Defendants.

> Sub-contractor agrees that to the fullest extent permitted by law, the Sub-Contractor shall not bring any legal action against Contractor and shall release, indemnify, defend and hold harmless the Prime Contractor and Contractor and their agents, employees and representatives from and against all claims, damages, losses, attorney's fees and demands in any way arising from connected with work under this Sub-Contract including those arising from Contractor's negligence or that of its agents, servants or employees arising from allegedly defective products or from the breach of any implied warranty.

Id. As well, through the Disclaimer he signed, Plaintiff released the Defendants from liability for any injuries due to any accident which occurred on a job he was performing for the Defendants.

> I have chosen not to insure myself with Workman's Compensation. I will not hold Fagen's, Inc., Fagan Building Centers, Inc., its employees, management or owners liable for any injuries, damages or wages lost due to any accident which occurs on or en route to an Installed Services, Division of Fagen's Building Centers, Inc., job.

Dkt. [23-4].

Plaintiff asserts that he was injured by the alleged negligence of the Defendants while in the course and scope of his work on scaffolding assembled and provided by the Defendants while doing subcontractor work for the Defendants. Complaint, ¶¶ 7, 8, 11, 15. The Defendants urge that, assuming *arguendo* the Defendant committed some act of negligence which caused

6

Plaintiff's injuries, by the facts averred in his Complaint, Plaintiff's claim falls squarely within the terms of the Agreement and the Disclaimer, through which Plaintiff released any such claim and/or agreed to indemnify the Defendants and, therefore, summary judgment in Defendants' favor is required.

Plaintiff argues that exculpatory and indemnity clauses in contracts "are disfavored and must meet certain conditions to be enforceable." Valhal Corp. v. Sullivan Associates, Inc., 44 F.3d 195, 202 (3d Cir. 1995). Those conditions are as follows.

> First, the clause must not contravene public policy. Second, the contract must relate solely to the private affairs of the contracting parties and not include a matter of public interest. Third, each party must be a free bargaining agent. In addition, an exculpatory or indemnity clause will still not be enforced unless it is clear that the beneficiary of the clause is being relieved of liability only for his/her own acts of negligence. The clause must be construed strictly and the contract must state the intention of the parties with the greatest particularity. Furthermore, any ambiguity must be construed against the party seeking immunity, and that party also has the burden of proving each of the prerequisites to enforcement.

Id. (citation omitted).

Plaintiff does not argue that the clauses at issue contravene public policy or include matters of public interest. Nor is there any argument that Plaintiff did not freely enter into these agreements with Defendants. Therefore, it appears that the first three conditions of the Vahal test have been met.

Plaintiff does not suggest that the clauses are ambiguous and we find that they are not. See generally, Glenn Distributors Corp. v. Carlisle Plastics, Inc., 297 F.3d 294, 300 (3d Cir. 2002)(Noting that a contract is ambiguous under Pennsylvania law if "it is reasonably or fairly susceptible of different constructions and is capable of being understood in more senses than one

7

and is obscure in meaning through indefiniteness of expression or has a double meaning."). The clauses are reasonably capable of only one construction, that is, that the parties specifically contemplated negligence by the Defendants and clearly and unambiguously expressed Plaintiff's release of the claims of negligence being made in the instant action against the Defendants. Thus, by the precise terms of the Agreement and Disclaimer, Plaintiff released the claim at issue in this case and/or agreed to indemnify the Defendants. Therefore, summary judgment in favor of the Defendants is properly granted.

Plaintiff's sole argument against summary judgment based on these clauses is set forth in a single sentence in his brief: "... the clauses in both agreements cannot be enforceable because the beneficiaries are attempting to be relieved from actions of third parties." Plaintiff's Brief in Opposition to Motion for Summary Judgment, Dkt. [31], p. 7. Plaintiff does not identify the specific language of the clauses from which he draws this conclusion. Moreover, Plaintiff's claim here is that the Defendants were negligent because the scaffolding they provided did not have guardrails or fall protection, not that the action of any third-party caused his injuries. Accordingly, Plaintiff's argument lacks merit.

Even if the Court could properly conclude that the Agreement and Disclaimer were unenforceable, summary judgment in Defendants' favor would be proper nevertheless because Plaintiff cannot establish, as a matter of law, any claim of negligence. This is so because Plaintiff cannot establish causation.

In his Complaint, Plaintiff alleged that he was "thrown" from defective scaffolding to the wood and concrete floor below. Complaint, ¶ 15. However, the facts discovered in this case

establish that no one witnessed Plaintiff's fall and that Plaintiff himself does not know how or why he fell. Specifically, Plaintiff testified as follows:

> Q. So do you know exactly how you fell?
>
> A. No . . . .

Kelley Dep., p. 101. Plaintiff further testified as follows:

> Q. Do you know if you fell because of some problem with the scaffolding?
>
> A. I don't know it. I just know it did not behave like any other scaffolding I had ever been on.
>
> Q. Do you know how [the scaffolding] behaved at the time of your fall?
>
> A. No, I don't have any memory of falling.

Kelley Dep., pp. 103-104. Further, Plaintiff is apparently unable to state that he fell or was "thrown" from the scaffolding at all since he does not recall stepping onto it a second time.

> Q. Did you get on the platform a second time?
>
> A. Yes, obviously. The last thing I can remember is going up the stairs. That's the last thing I remember. I got back up on it, but I don't remember.
> &ast; &ast; &ast;
> The last thing I can remember is going up the stairs, and the next thing it's 12 days later.

Kelley Dep., p. 101.

As the Defendants correctly note, absent proof of how his fall occurred, Plaintiff cannot establish the element of causation that is fundamental to a claim of negligence. "[T]he mere existence of negligence and the occurrence of injury are insufficient to impose liability upon any

9

one. There remains to be proved the vitally important link of causation." Cuthbert v. City of Philadelphia, 209 A.2d 261, 263 (Pa. 1965)(citations omitted).

Plaintiff argues that under the doctrine of *res ipsa loquitor*, it may be inferred that the harm he suffered was caused by the Defendants' negligence. In Gilbert v. Korvette, Inc., 327 A.2d 94 (Pa. 1974), the Pennsylvania Supreme Court adopted Section 328D of the Restatement (Second) of Torts, titled Res Ipsa Loquitor, which provides in pertinent part as follows:

> (1) It may be inferred that harm suffered by the plaintiff is caused by negligence of the defendant when
>
> (a) the event is of a kind which ordinarily does not occur in the absence of negligence;
>
> (b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and
>
> (c) the indicated negligence is within the scope of the defendant's duty to the plaintiff.

Restatement (Second) of Torts § 328D (1965).

Assuming for the sake of argument that Plaintiff fell from the scaffolding,[24] Plaintiff nevertheless cannot establish the above-noted factors necessary to gain the inference of *res ipsa loquitor*. First, a fall from a safe or non-defective scaffold could certainly occur in the absence of negligence. Second, the Plaintiff cannot rule out other responsible causes, including his own conduct, because he does not know how or why he fell and no one witnessed the fall. The accident report suggests that Plaintiff's conduct caused his fall, that is, that he misjudged the position of the planks on the scaffolding, stepping off to a lower plank and then, apparently

---

[24] As noted, Plaintiff recalls only that he went up the stairs to the landing and does not recall stepping on to the scaffolding prior to his fall.

having lost his footing or balance, he fell to the ground. See Dkt. [31-7]. While Plaintiff need not exclude all other possible causes of the incident, he is "required to produce evidence from which a finder of fact might reasonably conclude that the [Defendants were], more probably than not, negligent." DiVittorio v. United States, 63 Fed. Appx. 604 (3d Cir. 2003). This Plaintiff has not done.

Third, Plaintiff is unable to establish a duty on the part of the Defendants. According to the Agreement, the parties contracted that Plaintiff would be responsible for his own safety. Paragraph 6 of the Agreement states in pertinent part as follows:

> The Sub-Contractor shall take all reasonable safety precautions with respect to his/her work and shall comply with all safety measures initiated by the Contractor and with all applicable OSHA laws, laws, ordinances, rules, regulations and orders of any public authority for the safety of persons or property.

Dkt. [23-3], ¶ 6. Plaintiff has not disputed this contract provision.

Plaintiff argues, nevertheless, that Section 392 of the Restatement (Second) of Torts imposed a duty upon the Defendants to supply a safe scaffold. Section 392 provides in pertinent part as follows:

> One who supplies to another ... a chattel to be used for the supplier's business purposes is subject to liability to those for whose use the chattel is supplied ... for physical harm caused by the use of the chattel in the matter for which and by persons for whose use the chattel is supplied
>
> (a) if the supplier fails to exercise reasonable care to make the chattel safe for the use for which it is supplied, or
>
> (b) if he fails to exercise reasonable care to discover its dangerous condition or character, and to inform those whom he should expect to use it.

Restatement (Second) of Torts, § 392 (1965). As noted, Plaintiff used scaffolding that was owned by Defendants and available for his use on the job. Plaintiff cites to several cases where suppliers of defective chattel were found liable under Section 392 to those for whose use the chattel was supplied. See Labick v. Vicker, 186 A.2d 874 (Pa. Super. 1962)(car dealer provided defective ladder to individual hired to wash the showroom walls and ceiling); Fullard v. Urban Redevelopment Authority of Pittsburgh, 293 A.2d 118 (Pa. Super. 1972)(housing authority agreed to supply tools for demolition project and provided defective chisel to plaintiff, who suffered an eye injury); Donaldson v. Com., Dept. of Transp., 596 A.2d 269 (1991), overruled in part on other grounds, Leonard v. Com., 771 A.2d 1238 (Pa. 2001)(contractor supplied defective scaffolding to subcontractor's employee). In none of those cases, however, was there any contractual agreement that the subcontractor or independent contractor would be responsible for his own safety. Accordingly, assuming the applicability of Section 392 in the first instance, the instant case is clearly distinguishable from those relied upon by Plaintiff. Moreover, in making his Section 392 argument, Plaintiff omitted reference to Paragraph 1 of the Agreement, which provides that the sub-contractor agrees to furnish all tools necessary to complete the work offered by the contractor. Dkt. [23-3]. Plaintiff also omitted the second portion of Comment e to Section 392, which provides as follows:

> [I]f it is understood that the person who is to do the work is to supply his own instrumentalities, but the person for whom the work is to be done permits his own tools or appliances to be used as a favor to the person doing the work, the tools and appliances are supplied as a gratuity and not for use for the supplier's business.

Restatement (Second) of Torts, § 392, Comment e (1965). We note that when these omissions are considered, Section 392 would seem to be altogether inapplicable under the facts of this case since under the Agreement Plaintiff was to furnish his own tools and the Defendants permitted the use of their scaffolding by Plaintiff as a favor to Plaintiff.

Plaintiff also argues that because Defendants were in violation of Occupational Safety and Health Administration ("OSHA") regulations at the time of the accident, their conduct constituted negligence *per se*. In this Circuit, the violation of a federal regulation or statute may constitute negligence *per se* provided that the following conditions are met: "1) the statute or regulation must clearly apply to the conduct of the defendant; 2) the defendant must violate the statute or regulation; and 3) the violation of the statute must proximately cause the plaintiff's injuries." Cecile Industries, Inc. v. United States, 793 F.2d 97, 99 (3d Cir. 1986).

Following the accident at issue, Defendants received a citation from the U.S. Department of Labor for having violated OSHA regulation 29 C.F.R. 1926.451(g)(1)(vii), indicating that Defendants did not have a guardrail system or personal fall arrest system in place on scaffolds ten feet or higher. Plaintiff argues that Defendants' failure to include any safety railing constitutes negligence *per se*.

Plaintiff's argument of negligence *per se* fails for the same reason that the doctrine of *re ipsa loquitor* cannot be applied here. Plaintiff does not know how or why he fell, nor whether he was even on the scaffolding when he fell. He is unable, therefore, to establish as a matter of law that the absence of these safety rails caused his injuries. Under these facts, his own testimony that the presence of safety rails "might" have given him "something to grab onto on the way

13

down" is insufficient to create a genuine issue of material fact for the jury on the issue of negligence *per se*.[25]

For the above-stated reasons Plaintiff cannot establish, as a matter of law, the applicability of *res ipsa loquitor* or negligence *per se* in this case and cannot otherwise establish the requisite causation element to support his claim of negligence. Thus, summary judgment is properly entered in favor of the Defendants.[26]

III. CONCLUSION

For the above-stated reasons, summary judgment is properly granted in favor of the Defendants and against Plaintiff in this case.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report. Any party opposing the objections shall have seven (7) days from the date of service of the objections to respond thereto. Failure to timely file objections may constitute a waiver of any appellate rights.

Respectfully submitted,

/s/ *Amy Reynolds Hay*
United States Magistrate Judge

Dated: 26 November, 2007

cc: Hon. Donetta W. Ambrose
Chief United States District Judge

All counsel of record by Notice of Electronic Filing

---

[25] Kelley Dep., p. 127.

[26] Given the above-suggested disposition, we do not reach Defendants' argument that Plaintiff's claim is barred under the doctrine of assumption of the risk.